Michelle **LINDAHL**, Plaintiff–Appellant,

v.

**AIR FRANCE**, a French Corporation, Defendant–Appellee.

No. 89–55936.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1991.

Decided April 22, 1991.

William John Kennedy, Darling, Hall & Rae, Los Angeles, Cal., for plaintiff-appellant.

J. Jay Rakow, Christensen, White, Miller, Fink & Jacobs, Los Angeles, Cal., John K. Weir, Haight, Gardner, Poor & Havens, New York City, for defendant-appellee.

Before BOOCHEVER, HALL and RYMER, Circuit Judges.

RYMER, Circuit Judge:

Michelle Lindahl brought this suit against her employer, Air France, for sex discrimination under Title VII of the Civil Rights Act of 1964 and age discrimination under the Age Discrimination in Employment Act (ADEA) based on Air France giving a promotion to a young male instead of to her, a 49-year-old female. The district court granted Air France's motion for summary judgment. We reverse.

## I

Lindahl worked as a Customer Promotion Agent in Air France's Los Angeles office. The office had two groups of employees to handle sales activities, Customer Promotion Agents and Sales Representatives. Sales Representatives worked mostly in the field promoting sales, while the Customer Promotion Agents worked inside, providing backup to the Sales Representatives.

In 1982, the District Manager, Karl Kershaw, told the Customer Promotion Agents that Air France was planning to create a new position of Senior Customer Promotion Agent and invited all of them to apply for the position. After considering their qualifications, Kershaw told Lindahl that she was the most qualified and would be given the promotion. Subsequently, however, Air France decided not to create the position, and Lindahl did not get the promotion.

In 1987, without any prior notification to the Customer Promotion Agents, Kershaw announced that he had chosen Edward Michels to fill a new Senior Customer Promotion Agent position. At that time, there were four eligible candidates: two women over age 40 (including Lindahl), and two men under age 40 (including Michels).

Lindahl, upset about the decision, decided to pursue Air France's grievance procedure. First, she asked Kershaw to give an explanation. After about six weeks, he responded that Michels had the "best overall qualifications." Unsatisfied, she wrote to Regional Manager Robert Watson. Watson responded by affirming Kershaw's decision. Finally, Lindahl had her attorney take her grievance to Personnel Services Manager Eugene Carrara. At this time, she made clear that she felt that the decision was the product of age and sex discrimination. Carrara held a hearing and decided to reject her claim because he believed the promotion decision was reasonable. In his decision, he stated that Michels's computer expertise was the principal reason for selecting him.

While the grievance proceeding was pending, Kershaw apparently became dissatisfied with the new organization of the group, and Watson suggested a reorganization to General Manager USA, Jean–Claude Baumgarten, that would have put Michels in a purely technical function and would have created another Senior Customer Promotion Agent position to deal with sales backup. The new position would have gone to Lindahl, but Baumgarten rejected the proposal.

Lindahl then filed claims with the California Department of Fair Employment and Housing and with the federal Equal Employment Opportunity Commission (EEOC). After exhausting her administrative remedies, she filed suit in the district court, alleging age and sex discrimination under 29 U.S.C. §§ 623, 631 (ADEA) (prohibiting age discrimination against individuals over age 40) and 42 U.S.C. § 2000e–2(a) (Title VII) (prohibiting sex discrimination). Air France moved for summary judgment on both causes of action.

The district court granted summary judgment on the ground that Lindahl had not raised a genuine issue of material fact as to whether Air France's legitimate, non-discriminatory explanations are pretexts for discrimination. Lindahl filed a Rule 59(e) motion to alter, amend, and vacate the judgment, which the district court denied. She now appeals.

## II

We review the district court's decision to grant summary judgment de novo. *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

### A

Summary judgment is proper if no factual issues exist for trial. The party opposing summary judgment must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513. However, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

■ Lindahl argues that Air France's decision to promote Michels was disparate treatment on the basis of sex and age in violation of Title VII and the ADEA.[1] The Supreme Court established the allocation of proof in Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff "must carry the initial burden under the statute of establishing a prima facie case of ... discrimination." *Id.* at 802, 93 S.Ct. at 1824. The plaintiff can establish a prima facie case by showing, for example, that she belongs to a protected group, that she applied and was qualified for a job which was open for applications, that she was rejected, and that the position remained open after her rejection and the employer continued to seek applicants from persons of the plaintiff's qualifications. *Id.; see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981) (explaining that the *McDonnell Douglas* formulation is flexible and can be adapted to fit the facts of each case).

■ "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. At that point, the burden shifts back to the plaintiff to show that the employer's reason was a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825. The plaintiff may carry this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Disparate treatment claims under the ADEA "are analyzed by the same standard used to analyze disparate treatment claims under Title VII." *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1436 (9th Cir.1990).

Lindahl contends that once she has made out a prima facie case of discrimination, summary judgment is necessarily improper. She reasons that the prima facie case raises an inference of discrimination, and because on summary judgment all inferences must be resolved in her favor, she need not produce any additional evidence of pretext to defeat summary judgment.

■ We have made clear that a plaintiff cannot defeat summary judgment simply by making out a prima facie case. *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983). It is true that the prima facie case raises an inference of discrimination. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. However, when the employer produces legitimate, nondiscriminatory reasons for the employment decision, the inference of discrimination is rebutted. *Id.* at 255, 101 S.Ct. at 1094. "[T]he defendant's articulation of a legitimate nondiscriminatory reason serves ... to shift the burden back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual." *Lowe v. City of Monrovia*, 775 F.2d 998, 1008 (9th Cir. 1985), *amended*, 784 F.2d 1407 (1986).

■ The plaintiff cannot carry this burden simply by restating the prima facie

---

1. Lindahl could also show illegal discrimination by demonstrating sufficient disparate impact. Although she presented this theory to the district court, she has not argued it in her brief and has therefore abandoned this claim on appeal.

case and expressing an intent to challenge the credibility of the employer's witnesses on cross-examination. She must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible. *See Steckl,* 703 F.2d at 393. Still, because of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact.

> [A]ny indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a factfinder. Once a *prima facie* case is established ..., summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the "elusive factual question of intentional discrimination."

*Lowe,* 775 F.2d at 1009 (quoting *Burdine,* 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8).

### B

The district court concluded, and the parties do not dispute, that Lindahl made out a prima facie case of discrimination. She is a woman over age 40 who, in effect, applied for a promotion, was qualified for it, but lost it to a man under age 40. The parties also do not dispute that Air France met its burden of producing legitimate, nondiscriminatory reasons for promoting Michels and not Lindahl. Air France points to the deposition testimony of Watson and Kershaw, indicating that their reasons for promoting Michels were (1) his computer proficiency, and (2) his leadership abilities as they related to Air France's need to establish order, rules, and regulations in a chaotic office.

■ The issue on appeal is therefore whether Lindahl raised a genuine issue of material fact as to pretext. We believe Lindahl has raised factual questions material to demonstrating that Air France's explanations are not credible and that discrimination was the more likely explanation for Michels's promotion.[2]

As to Air France's explanation that Michels was chosen for his computer proficiency, Lindahl argues that it is not credible because neither Kershaw nor Watson (the ones most closely associated with the decision) mentioned it as the reason for choosing Michels. Kershaw had said only that Michels had "the best overall qualifications to lead the group," and Watson had simply affirmed Kershaw's decision. The computer explanation did not come out until Personnel Services Manager Carrara, who was not involved with the decision, mentioned it four months later in response to a letter from Lindahl's attorney.

Simply because an explanation comes after the beginning of litigation does not make it inherently incredible. *Merrick,* 892 F.2d at 1438. Nevertheless, in this case, the computer explanation would have been such a straightforward answer to Lindahl's inquiries that one might expect that Kershaw and Watson would have mentioned it if it really were the explanation. That they instead gave vague explanations about "overall qualifications" might suggest that the computer explanation was a later fabrication.

Moreover, computer expertise was not clearly related to the leadership position. Indeed, computer proficiency had never been listed as a qualification for the position of Senior Customer Promotion Agent. While Michels's computer knowledge might have been helpful to Air France generally, it is not clear that it made him a better candidate to lead the Customer Promotion Group.

Lindahl also challenges the credibility of Air France's explanation that Michels was chosen for his leadership abilities. Kershaw testified in his deposition that "being accepted" is an important part of being a leader, but he admitted that Michels "was not well liked by the group." By contrast, Kershaw described Lindahl as having "a good relationship with the staff."

Lindahl also stated that Michels was preoccupied with the computer and neglected his duties backing up the Sales Representa-

---

2. Because we would reach the same conclusion whether the case would be tried by a judge or a jury, we do not reach the issue of whether 28 U.S.C. § 1330 precludes a jury trial in this case.

tives and that these backup duties were traditionally part of the Customer Promotion Group's responsibilities. Finally, the record shows that Michels was the most junior member of the Customer Promotion Group.

All of these facts tend to show that Michels may not have been the best person to lead the group, and they therefore suggest that leadership ability may not have been the real reason for choosing Michels over Lindahl. *See Williams v. Edward Apffels Coffee Co.*, 792 F.2d 1482, 1487 (9th Cir. 1986) (choosing inexperienced candidates can raise question about motives). *But see Cotton v. City of Alameda*, 812 F.2d 1245, 1249 (9th Cir.1987) (experience is not sole criterion employer may use to determine qualifications).

Moreover, even if Kershaw did make his decision based on leadership abilities, other evidence could suggest that his evaluation of leadership ability was itself sexist. Lindahl points out that Kershaw made statements about the candidates' relative qualifications that reflect male/female stereotypes. Kershaw testified in his deposition that he believed that both female candidates get "nervous" and that the other female candidate "gets easily upset [and] loses control." By contrast, Kershaw described Michels's leadership qualities as "not to back away from a situation, to take hold immediately of the situation, to attack the situation right away, to stay cool throughout the whole process." He went on to comment that "sitting and griping and getting emotional is not contributing to, No. 1, getting the job done, number two, to the morale and atmosphere of the group."

The Supreme Court has made clear that sex stereotyping can be evidence of sex discrimination, especially when linked to the employment decision. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–52, 109 S.Ct. 1775, 1790–92, 104 L.Ed.2d 268 (1989). Kershaw apparently saw Michels as aggressive and cool (in addition to being the one who could impose order), while he

saw the female candidates as nervous and emotional. His comments could suggest that Kershaw made his decision on the basis of stereotypical images of men and women, specifically that women do not make good leaders because they are too "emotional."

Finally, Lindahl points to evidence showing that Air France handled the promotion decision differently when only women were eligible than when young men were eligible. In 1982, when the possibility of an opening for Senior Customer Promotion Agent position first arose, the only eligible candidates for the position were women. Kershaw told all of them about the possible opening and that they would have to take a test. Air France abandoned the idea to add the position. In 1987, two men under age 40 and two women over age 40 were eligible. Kershaw did not tell the candidates about the position, and Michels got the promotion without taking a test or having an interview. This difference in treatment might further support an inference that Air France was discriminating against older women.

While not overwhelming, Lindahl's evidence of discriminatory motive is sufficient to raise a genuine issue of fact. She has pointed to facts that could call into question the credibility of Air France's nondiscriminatory explanations and could suggest discriminatory motives. Whether the facts do indicate discrimination is a question that should ordinarily be resolved by a factfinder, and we believe it is possible that a reasonable trier of fact could find that Air France discriminated against Lindahl in promoting Michels. We therefore conclude that summary judgment should not have been granted.[3]

**REVERSED AND REMANDED.**

---

**3.** Lindahl also argues that the district court erred in concluding that she was barred from

raising a claim for retaliation for the first time in her opposition to summary judgment. Her

retaliation theory is that General Manager Baumgarten rejected the reorganization proposal that would have given her a promotion in order to get back at her for bringing discrimination charges. The district court did not consider the merits of the claim because it was not raised in the EEOC complaint or in the federal court complaint.

In light of our disposition, we need not reach this issue. We express no opinion as to whether leave to amend might be appropriate, whether the issue may be preserved in the pre-trial order, or whether the facts have evidentiary significance.