36 F.3d 1102
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Roderick V. FLOWERS, Plaintiff-Appellant,
v.
CITY OF LOS ANGELES, Defendant-Appellee.
 No. 93-56491.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 20, 1994.*
Decided Sept. 22, 1994.
 
 Before: SNEED, WIGGINS, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Roderick Flowers appeals pro se the district court's summary judgment in favor of the City of Los Angeles (City) in his employment discrimination action alleging race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-2(a)(1) (1988) (Title VII). Flowers contends that he was denied vocational rehabilitation services, benefits and transfers under City programs because of his race. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 We review de novo a district court's grant of summary judgment. Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir.1991). Viewing the evidence in the light most favorable to the nonmoving party, we determine whether any genuine issues of material fact exist. Williams v. Edward Apffels Coffee Co., 792 F.2d 1482, 1484 (9th Cir.1986).
 
 
 4
 * Background
 
 
 5
 Flowers was employed by the City's Department of General Services as an electrician. In August 1985, Flowers suffered an on-the-job injury to his knee. Flowers was examined by a doctor under contract with the City and returned to work. He received therapy from that doctor without improvement. Beginning in September 1985 and continuing though January 1986, Flowers was designated temporarily totally disabled by the City doctor and remained off work, during which time surgery was performed on his knee. In January 1986, Flowers returned to work full time at the direction of a different City doctor. Flowers continued working on light-duty assignments until June 1986. In June 1986, Flowers, pursuant to City policy, selected a doctor of his own choosing. After examining him, Flower's "free-choice" doctor ordered him to remain off work until July 1986. Flowers returned to work on July 23, 1986, and continued working until August 21, 1986.
 
 
 6
 During that time, both the City doctor and Flowers' "free-choice" doctor believed that his injury was permanent and stationary, however, neither doctor indicated that there would be any restrictions on his ability to perform the duties of his job.
 
 
 7
 In August 1986, Flowers stopped working and was never able to return again. From August 21, 1986 until June 8, 1987, Flowers received a combination of injury on duty pay, which is 90% of his salary and is tax-free, sick leave pay and an advance on his prospective workers compensation disability award. Beginning on June 9, 1987, Flowers received vocational rehabilitation temporary disability indemnity payments of $224.00 per work and continued to receive them until he left City service.
 
 
 8
 During the period between August 1986 and June 1987, the City's doctors and Flowers' "free-choice" doctor offered conflicting opinions as to his ability to return to work in the same capacity as before his injury. In addition, there were substantial delays in the processing of Flowers' workers compensation information. Due to the delays in making reports and proper filing of the reports, Flowers was not determined to be incapable of working in the same capacity as before his injury until August 1987. Consequently, he was not declared eligible for a transfer until August 1987.[1]
 
 
 9
 Following his injury, but prior to the time he was declared eligible for a section 108 transfer, Flowers applied for several other City positions. He was not selected for any of those positions. After he became eligible for a section 108 transfer, workers compensation counselors tried without success to place him in a position suitable to his skills and work restrictions. In August 1988, Flowers resigned from City service. Flowers then filed the present Title VII action.
 
 II
 Disparate Treatment
 
 10
 An employer may not discriminate against any individual with respect to employment decisions because of such individual's race. 42 U.S.C. Sec. 2000e-2(a)(1). A plaintiff may prove the existence of such unlawful discrimination by establishing disparate treatment, disparate impact or the existence of a hostile working environment. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977). A claim of disparate treatment requires proof of discriminatory intent. Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 n. 9 (9th Cir.1991). Discriminatory intent may be proved by direct or indirect evidence. Arlington Heights v. Metro. Housing Corp., 429 U.S. 252, 266 (1977). Absent a clear pattern of disparate treatment, inexplicable on grounds other than race, "disparate impact alone is not determinative, and the Court must look to other evidence." Id.
 
 
 11
 When the plaintiff establishes a prima facie case of employment discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the decision. Lindahl, 930 F.2d at 1437. If the employer articulates a legitimate, nondiscriminatory reason, the plaintiff must raise a genuine factual issue as to whether the proffered reason was a pretext for discrimination. Id. The plaintiff "must produce specific facts either directly evidencing a discriminatory motive or showing that the employer's explanation is not credible." Id. at 1438.
 
 
 12
 Here, Flowers' claim of disparate treatment is based on his contention that he was denied various benefits and transfers available under City programs because of his race. As direct evidence that he was denied such benefits on the basis of his race, he claims that his supervisor made a discriminatory comment.[2] Nevertheless, the single statement of a low level supervisor indicating discriminatory intent is insufficient to create a genuine issue of material fact as to the City's motivations. See Federal Deposit Insurance Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir.1991).
 
 
 13
 Flowers also claims that the lengthy delays in processing his workers compensation case is indirect evidence of discriminatory intent. Conclusory allegations of discrimination, without more, however, are not sufficient to withstand summary judgment. Forsberg v. Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1419 (9th Cir.1988). Accordingly, the district court properly granted summary judgment in favor of the City. Lindahl, 930 F.2d at 1436.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under the terms of Section 108 of the Los Angeles City Charter, City employees who become unable to perform their customary duties may be eligible for a transfer to a different position in a different City department with certain limitations. To obtain a section 108 transfer for medical reasons, an employee must first be declared incapable of performing duties in his position, the employee must possess the minimum qualifications and be capable of performing the duties of the new position, and the transfer cannot result in a promotion
 
 
 [2]
 During an argument, Flowers' supervisor, a white male, made reference to "you people," a comment Flowers interpreted as racially motivated