**Anne R. PRICE, Plaintiff,**

v.

**TACO BELL CORPORATION, a foreign corporation, Defendant.**

**Civil No. 95–2–JO.**

United States District Court, D. Oregon.

June 19, 1996.

---

11. *See*, fn. 3, *supra*.

Jana Toran, Portland, OR, for Plaintiff.

Corbett Gordon, Corbett Gordon & Associates, Portland, OR, for Defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

Plaintiff, Anne R. Price, originally brought action against her former employer, Taco Bell Corporation ("defendant"), for racial discrimination in violation of 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 and O.R.S. 659.030, and for age discrimination in violation of the Age Discrimination in Employment Act and O.R.S. 659.030.[1] Plaintiff also brought an aiding and abetting claim against defendant Stewart. Defendants removed the case to federal court in January 1995. In earlier proceedings, this court dismisséd plaintiff's claims against Stewart.

This case is now before me on defendant's motion for summary judgment in response to plaintiff's amended complaint. As explained below, plaintiff has offered sufficient evidence to create a material issue of fact as to whether defendant's failure to promote her was motivated by race. Therefore, defendant's motion is denied.

## FACTUAL BACKGROUND

Plaintiff, an African–American woman, was employed by defendant as an assistant restaurant general manager ("ARGM") from August 1991, until April 1994, when she quit. Plaintiff claims that during her employment with defendant, she was discriminated against in defendant's failure to promote her to the position of restaurant general manager ("RGM"). The parties' evidence establishes the following chronology of events:

---

1. In defendant's motion for summary judgment defendant states that plaintiff represented that she will be dropping the age discrimination claims and perhaps filing a second amended complaint. Although plaintiff has not filed a second amended complaint, her failure to argue the age discrimination claim in her reply brief or at oral argument suggests that she has dropped that claim. Therefore, this opinion will not address the age discrimination claim.

| | |
|---|---|
| 1991: | plaintiff hired as management trainee; |
| August 1991: | plaintiff promoted to ARGM position; |
| January 1993: | plaintiff tells her supervisor, Carl "Frosty" Swinford, orally and in writing that it is not her goal to be an RGM; |
| July 1993: | market manager Dara Dejbakhsh leaves defendant's employ, leaving the position vacant; |
| September 1993: | meeting held by group of managers who form a "review board" to evaluate potential management candidates; plaintiff is identified by this group as a potential candidate for promotion; |
| November 1993: | mega zone vice president, Julia Stewart, attends a "round table" meeting in Portland, at the request of Michael Swartz, team managed unit ("TMU") supervisor and market coordinator, to give Swartz feed back on whether six or seven individuals, including plaintiff, possess the qualifications for possible future promotion; |
| two or three days after the review meeting: | Swartz gives plaintiff a written assessment of the review board which states plaintiff is a good candidate for promotion and recommends a 30 day action plan; |
| November 18, 1993: | Swinford tells plaintiff that she is not going to be promoted; |
| November or December 1993: | Swartz is made RGM of the Beaverton–Hillsdale store; |
| January 1994: | Joe Ertman becomes market manager for the Portland market and is asked to perform his own assessment of the 38 stores under his supervision; |
| February 1994: | Ertman promotes Greg Jackson, ARGM and college graduate, to RGM; |
| March 1994: | Jeff Frank is hired to RGM position in plaintiff's store; |
| March 1995: | Camille Sherman, ARGM, is promoted to RGM; |
| July 1995: | Dave Patton is promoted to RGM.[2] |

Plaintiff contends that because she received a favorable evaluation from the review board but was not promoted to RGM along with the other individuals brought in front of the "round table" meeting, defendant discriminated against her on the basis of her race.

## STANDARDS

■ Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A scintilla of

evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

■ Substantive law governing a claim determines whether a fact is material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d 202 (1986). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987). Finally, inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

Title VII provides that "it shall be an unlawful employment practice for an employ-

---

**2.** David Patton was promoted to an RGM position over a year after plaintiff left defendant's employ. Therefore, defendant's promotion of Patton is of tenuous relevance to plaintiff's claim.

er * * * to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race * * *." 42 U.S.C. § 2000e–2(a)(1). Plaintiff characterizes her claim in terms of disparate treatment, rather than disparate impact. In these types of cases, the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), articulated the burdens of the parties as follows: (1) the complainant must first carry the initial burden of establishing a prima facie case of racial discrimination; (2) once plaintiff has made out a prima facie case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the employer's action; and (3) if the defendant articulates a legitimate non-discriminatory reason, plaintiff must then prove by a preponderance of the evidence that the defendant's stated reason is pretextual. *McDonnell Douglas,* 411 U.S. at 802, 804, 93 S.Ct. at 1824, 1825; *Burdine,* 450 U.S. at 252–53, 256, 101 S.Ct. at 1093–94, 1095; *see also Wallis v. J.R. Simplot,* 26 F.3d 885, 889 (9th Cir.1994); *Fragante v. City and County of Honolulu,* 888 F.2d 591, 594–95 (9th Cir.1989).

## A. Plaintiff's prima facie case

The Supreme Court in *Burdine* made clear that the burden of establishing a prima facie case of discrimination is not onerous. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. The Ninth Circuit has articulated a clear test for determining whether a plaintiff has made out a prima facie case. A plaintiff "must offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Lowe v. City of Monrovia,* 775 F.2d 998 (9th Cir. 1985) (citing *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094). The Ninth Circuit found that a common way to establish a prima facie case of discrimination was for a plaintiff to meet the four requirements set forth in *McDonnell Douglas:*

1. that the plaintiff belongs to a class protected by Title VII;

2. that the plaintiff applied and was qualified for a job for which the employer was seeking applicants;

3. that, despite being qualified, the plaintiff was rejected; and

4. that, after the plaintiff's rejection, the position remained open and the employer continued to seek applications from persons of comparable qualifications.

*Lowe,* 775 F.2d at 1005 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824).

In this case, it is undisputed that plaintiff was a member of a protected class. All other aspects of plaintiff's prima facie case are disputed.

Defendant makes several arguments in support of its motion for summary judgment: (1) plaintiff did not apply for a RGM position, and Ertman was unaware that plaintiff was interested in an RGM position; (2) at the time in question, there were no open RGM positions to which to promote plaintiff; (3) if the court finds that there were RGM positions available at the time, plaintiff was not qualified for an RGM position; and (4) other RGM positions that became available were filled by more qualified individuals. I will address each of these arguments in turn.

### 1. *Plaintiff did not apply for an RGM position*

As part of its argument that plaintiff has not met the prima facie elements, defendant suggests that plaintiff never applied for a RGM position. There is some question as to whether Ertman knew that plaintiff was interested in being a RGM. Plaintiff states in her deposition:

Q: Had you told somebody [at the time of the "round table" meeting] that you wanted to be a general manager?

A: I was working toward that. I would have told my boss [Carl Swinford].

    \*    \*    \*    \*    \*    \*

Q: So you went before this review board in September of 1993?

A: Uh-huh

Q: Is that right?

A: Yes

Q: And that's what you consider to be your application [to be a RGM]?

A: Yes.

Price Deposition, p. 62, 63.

Later in her deposition, plaintiff states that she told Ertman that she was interested in a RGM position.

Defendant produced an affidavit of Joe Ertman in which he states that:

> [n]o one ever came to me and suggested that Anne Price be promoted.  * * * Mr. Swinford never told me that Anne Price sought promotion to the position of RGM. Ms. Price never explicitly told me she was seeking a promotion, although I understood that she was interested in additional management responsibilities.  I began assessing her—and all my other ARGMs—to determine who would be promotable.  I had not completed that assessment when Ms. Price took her leave of absence in the Spring of 1994.

Ertman Affidavit, p. 3.  Defendant also produced a statement of personal goals written by plaintiff in which plaintiff stated "it is not my goal to be a GM." [3]

There is no evidence on the record of any application form completed by plaintiff for an RGM position.  This may be because, as plaintiff testified, she considered her appearance before the review board to be an application.  Plaintiff was invited to the review board and the "round table" to be reviewed for potential promotion at some time in the future.  This evidence permits an inference that defendant knew that plaintiff was interested in advancement.  Furthermore, defendant does not actually contend that plaintiff was required to fill out an application to be considered for an RGM position, and it does not appear from the record that other candidates are required to fill out applications before being considered.  Therefore, I conclude that there is sufficient evidence that plaintiff applied for an RGM position to meet the requirements of *McDonnell Douglas* and *Lowe.*

**2.  *No positions were open at the time in question***

Part two of the *McDonnell Douglas/Lowe* test requires that plaintiff apply for a job for which the employer was seeking applicants. Defendant contends that there were no RGM openings during the time at issue.

Defendant argues that because plaintiff stated in her EEOC charge of discrimination that the earliest and latest act of discrimination occurred on November 18, 1993 (the day Swinford told plaintiff she would not be promoted), only RGM positions available before or during November 1993, are at issue and other alleged acts of discrimination occurring after the filing of a charge may not be included in the lawsuit without filing a new charge based on the additional acts.  *Green v. Los Angeles Super. of Schs.,* 883 F.2d 1472 (9th Cir.1989) (court refused to consider incidents of discrimination that allegedly occurred after the date of occurrence plaintiff listed in the EEOC charge).

Stewart stated in her deposition that there were no positions available in November or December of 1993.  In contrast, plaintiff stated at her deposition that she didn't know if there were any RGM positions available at the time she went before the review board, and that the purpose of the review board was to "try[ ] and see whom was promotable so that as positions came available they had * * * the managers to put in those positions."  Price Deposition, p. 63.  Therefore, it appears that although there may not have been any RGM positions available in November of 1993, there probably would be positions available in the near future.

In response to defendant's argument that alleged acts of discrimination occurring after November 1993 may not be included in the lawsuit because these acts constitute "new claims" under *Green,* plaintiff argues that evidence that defendant promoted and placed others in RGM positions after the November

---

**3.**  However, this statement was made in reference to plaintiff's personal goals for 1993 and was filled out in January of 1993, before either the review board or the "round table" expressed interest in plaintiff.  Therefore, the statement is of limited use in demonstrating plaintiff's intent in late 1993 or early 1994 although it does provide some insight into defendant's understanding of her goals at that time.

date is not a "new claim." Rather it is evidence relating to plaintiff's already existing claim that she was discriminated against when she was removed from the promotion track in November 1993.

In the alternative, plaintiff argues that even if the post-November openings are construed to involve a new claim, they are still admissible because they relate directly to plaintiff's original contention. *Green*, 883 F.2d at 1475-76.

The Ninth Circuit in *Green* states "[i]ncidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Green*, 883 F.2d at 1475-76 (citing *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir.1984)). The Ninth Circuit also stated that to determine whether claims are "like or reasonably related" to those in an EEOC charge, the court should inquire as to whether "the original EEOC investigation would have encompassed the additional charges." *Green*, 883 F.2d at 1476. The court also made clear that "'[t]he remedial purpose of Title VII and the paucity of legal training among those whom it is designed to protect require charges filed before the EEOC to be construed liberally.'" *Id.* (citing *Stache v. International Union of Bricklayers and Allied Craftsmen*, 852 F.2d 1231, 1233 (9th Cir.1988)). Construing plaintiff's charges liberally as required by the Ninth Circuit, the positions that became available and to which plaintiff was not promoted after November 1993 must be considered. These later promotions relate to the "round table" discussion and interview of plaintiff and other candidates, and should not be foreclosed as evidence of plaintiff's prima facie case.

The *Lowe/McDonnell* test also requires that plaintiff be qualified for the position she sought or from which she was rejected. Defendant argues that plaintiff was not qualified for an RGM position prior to her departure from defendant's employ.[4] Plaintiff responds that she was qualified for an RGM position and points to evidence that the review board members recommended her for promotion to an RGM position, potentially at the Beaverton–Hillsdale store.

Plaintiff had seven years of experience as a restaurant manager at Popeye's Chicken and three years experience as an ARGM at Taco Bell in 1994. Plaintiff argues that this experience qualifies her for an RGM position.

Plaintiff also points to her evaluations from July 1993 to March 1994, in which she received a rating of "successful plus".[5] Plaintiff also points to review board's findings that she was considered to be promotable. Swartz told her after the review board's decision to create a thirty day plan in preparation for being promoted to RGM.

Taken together, this evidence creates a fact issue as to whether plaintiff was qualified to be an RGM at the time in which Ertman was promoting others to RGM positions.

---

4. Defendant argues that under *Hagans v. Clark*, 752 F.2d 477 (9th Cir.1985), plaintiff must be more qualified than the individuals whom defendant hired as RGMs. Plaintiff, however, correctly cites *Lowe* for the proposition that she need only be as qualified as the individuals defendant hired as RGMs. In *Lowe*, 775 F.2d at 1006 n. 5, the Ninth Circuit clarified that it did not intend to establish a rule incompatible with the Supreme Court's statement of the law in *Burdine*, 450 U.S. at 251, 257, 101 S.Ct. at 1092-93, 1095-96 (rejecting the lower court's holding that defendant must prove that "those he hired * * * were somehow *better* qualified than was plaintiff" (emphasis in original)).

5. Defendant did not produce this evaluation. Evidently, these records have been inadvertently lost. Plaintiff, however, argues that the Ninth Circuit in *Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir.1993) holds that the court may draw an adverse inference from the destruction or spoilation against the party * * * responsible for that behavior. *Id.* at 1329 (citing *Akiona v. United States*, 938 F.2d 158 (9th Cir.1991)). Furthermore, "a finding of 'bad faith' is not a prerequisite to this corrective procedure." *Glover*, 6 F.3d at 1329 (citing *Unigard Sec. Ins. v. Lakewood Engineering & Mfg.*, 982 F.2d 363, 368-70 & n. 2 (9th Cir.1992)). Therefore, plaintiff argues that she is entitled to the inference that, if the records were found, they would contain evidence favorable to her case.

However, the evaluation in question is only one part of plaintiff's evidence. Therefore, I need not decide at this point what inferences should be drawn from the loss of the evaluation.

### 3. Employer continued to seek applicants of comparable qualifications

Part four of the *Lowe/McDonnell* prima facie test requires that plaintiff show that after her rejection, the position remained open and the employer continued to seek applications from persons of comparable qualifications.

Defendant argues that even if the court finds that there were positions open and that plaintiff was rejected by defendant for these positions, defendant sought and hired people in those positions who were more qualified than plaintiff rather than people of comparable skills.

In response, plaintiff points to the following facts: (1) Camille Sherman, co-ARGM of plaintiff's store, like plaintiff, did not have a college degree but was made RGM; (2) Greg Jackson, an ARGM who went before the review board, was promoted although his performance review scores were either the same as or lower than plaintiff's in many categories; and (3) Jeff Frank was made RGM although he was previously fired by defendant for misconduct.

■ As the Ninth Circuit explained in *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104 (9th Cir.1991), plaintiff must produce "very little" evidence to establish a prima facie case of discrimination. *Sischo–Nownejad,* 934 F.2d at 1111. I conclude that plaintiff's evidence of her qualifications and defendant's actions are sufficient to meet her initial burden.

### B. Defendant's burden of production

■ To rebut the presumption of discrimination raised by plaintiff in her prima facie case, defendant must set forth "through the introduction of admissible evidence, the reasons for plaintiff's rejection." *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094. In *Burdine,* the Supreme Court stated that "defendant need not persuade the court that it was actually motivated by the proffered reasons." *Id.* at 254, 101 S.Ct. at 1094. "The employer's burden is satisfied if [the employer] simply 'explains what he has done' or 'produc[es] evidence of legitimate non-discriminatory reasons [for termination].'" *Id.* at 256, 101 S.Ct. at 1095 (quoting *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, n. 2, 99 S.Ct. 295, 296, n. 2, 58 L.Ed. 216 (1978) (STEVENS, J., dissenting)).

■ Defendant produces depositions of Swartz, Ertman and Stewart, all of which state that plaintiff was not ready to assume the responsibilities of an RGM position. Defendant also points to a survey done in February or March of 1994[6] by a national consulting firm which listed plaintiff's store among the bottom ten stores out of the 38 surveyed on the basis of guest service time, accuracy and cleanliness. Ertman states in his affidavit that the survey was one reason he decided plaintiff was not ready to become an RGM.

Ertman also avers that he promoted others to RGM positions rather than plaintiff because he felt that the others were ready to handle RGM responsibilities and plaintiff was not. For example, Greg Jackson was a college graduate, Swartz had other RGM experience, and Sherman was employed at Taco Bell three years longer than plaintiff. In the case of Jeff Frank, Ertman states that he brought Frank on board because he felt Frank could give plaintiff some guidance and assist her in becoming RGM material.[7] Ertman was not aware that Frank had been previously fired by defendant for misconduct.

Defendant also relies on Swinford's affidavit, in which Swinford states that plaintiff hesitated to take risks and was intimidated by authority. Additionally, defendant has produced financial records and testimony to the effect that Ertman was concerned with the financial profitability of plaintiff's store.

---

6. The record is unclear as to when this survey was conducted. In Ertman's affidavit, he states that the survey was done in "approximately February" 1994. However, in plaintiff's deposition, she states that the survey was done on March 19, 1994. Whether the survey was conducted in February or March is not of critical importance to either defendant's or plaintiff's argument.

7. This testimony in itself creates an inconsistency in Ertman's stance that he did not know that plaintiff wanted to be an RGM.

Defendant also argues that the individuals promoted were more qualified than plaintiff for RGM positions. As evidence of this, defendant has produced employee performance reviews for plaintiff and the other employees who were promoted to show the differences in their evaluations.

The law does not require that the defendant persuade the court that it was actually motivated by the proffered reasons. Defendant must merely articulate legitimate non-discriminatory reasons for its failure to promote plaintiff in order to satisfy their burden of production. Defendant has done so and defendant's evidence of these legitimate non-discriminatory reasons for terminating plaintiff is sufficient to rebut plaintiff's prima facie case.

## C. *Plaintiff's burden of persuasion*

As recently acknowledged by this court in *Miranda v. Costco*, CV 95–1076–JO, 1996 WL 571185 (Opinion and Order May 7, 1996), in three recent cases, the Ninth Circuit clarified that while the plaintiff's burden of persuasion ·; not onerous, to survive a motion for summary judgment, plaintiff must make out a prima facie case plus produce some evidence going beyond the prima facie elements. *See Lam v. Hawaii*, 40 F.3d 1551 (9th Cir.1994), *Lindahl v. Air France*, 930 F.2d 1434 (9th Cir.1991), and *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104 (9th Cir.1991).

In the *Lam* case, plaintiff claimed that she was discriminated against on the basis of her sex and race because the defendant, University of Hawaii, failed to hire her. *Lam*, 40 F.3d at 1554. The defendant articulated two non-discriminatory reasons for its failure to hire plaintiff. Plaintiff, in turn, provided some evidence of defendant's discriminatory intent beyond the elements of her prima facie case; specifically, testimony that the head of defendant's appointments committee had disparaged plaintiff's abilities and was biased towards women and minorities. *Lam*, 40 F.3d at 1560. Plaintiff also produced evidence that another professor had stated that a male should be hired for the position. *Id.* The Ninth Circuit found that this evidence was enough to defeat defendant's motion for summary judgment. *Id.* at 1566–67.

It is important to note that the Ninth Circuit did not allow plaintiff to defeat summary judgment merely by disputing the defendant's proffered non-discriminatory reasons. The court required some evidence of discriminatory intent above and beyond that produced for plaintiff's prima facie case.[8] The court cited *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), for the proposition that " 'once the employer has met its initial burden of production, the district court may rule in its favor on the basis of any facts in the record supporting its position, even though the court may entirely disbelieve the employer's proffered rationale.' " *Lam*, 40 F.3d at

---

**8.** *Lindahl* and *Sischo* reach similar conclusions. *Lindahl* involved a sex discrimination claim. Plaintiff established a prima facie case and defendant proffered legitimate, non-discriminatory reasons for its failure to promote plaintiff. *Lindahl*, 930 F.2d at 1438. Plaintiff then not only disputed defendant's proffered reasons, but also produced evidence that the decision-maker made sexist comments such as female candidates "get nervous" and that female candidates "get easily upset [and] lose control." *Id.* at 1439. Plaintiff produced further evidence that defendant proceeded with the promotion decision differently when only women were eligible than when both women and men were eligible. This evidence went beyond merely refuting defendant's proffered reasons and showed some evidence of discriminatory intent by the decision-maker.

*Sischo* involved age and sex discrimination claims. Plaintiff survived summary judgement

in *Sischo* case by providing evidence that her superiors referred to her as "and old warhorse" as well as other derogatory remarks. *Sischo*, 934 F.2d at 1112. Plaintiff also showed that her superiors referred to her students as "little old ladies" indicating gender bias on the part of plaintiff's superiors. *Id.* The Ninth Circuit, in reversing the district court's grant of summary judgment stated:

[T]he evidence that Sischo–Nownejad introduced to establish a prima facie case is direct and consists of more than the *McDonnell Douglas* presumption. Accordingly, that evidence serves a dual purpose. It is sufficient not only to establish her prima facie case, but also to create a genuine issue of material fact regarding whether the defendants' articulated reasons are pretextual.

*Id.*

1566 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. at 521–25, 113 S.Ct. at 2755–56).

In *Lam*, plaintiff produced evidence above and beyond the prima facie case. Her evidence showing that the chairman of the hiring committee harbored ill-will towards women and Asians went one step beyond disputing the employer's legitimate non-discriminatory reasons.

The most recent Ninth Circuit pronouncement of the applicable summary judgment standard is in *Schnidrig v. Columbia Machine, Inc.,* 80 F.3d 1406 (9th Cir.1996), which is an ADEA case.

■■ In *Schnidrig*, the Ninth Circuit explained that once the plaintiff makes out a prima facie case of discrimination, the plaintiff's burden of producing further evidence depends on the quality of the evidence presented to establish the prima facie case. If plaintiff relies only on the presumption that arises from the factors set forth in *McDonnell Douglas*, and evidence to refute the defendant's legitimate explanation is "totally lacking," summary judgment is appropriate. *Schnidrig*, 80 F.3d at 1409. If, however, the plaintiff does not rely exclusively on the presumption but submits actual evidence,

> very little such evidence is necessary to raise a genuine issue of fact regarding an employer's motive; and indication of discriminatory motive . . . may suffice to raise a question that can only be resolved by a factfinder.

*Schnidrig*, 80 F.3d at 1409, (quoting *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir.1986)). Moreover, as the court in *Schnidrig* emphasized:

> This Court has set a high standard for the granting of summary judgement in employment discrimination cases. Most recently, we explained that " '[w]e require very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a "searching inquiry"—one that is most appropriately

conducted by the factfinder, upon a full record.' "

*Schnidrig*, 80 F.3d at 1410, (quoting *Lam v. University of Hawaii supra* at 1563).

In *Schnidrig*, the plaintiff, a 61 year old man, was denied a promotion to president of the defendant company. Plaintiff submitted substantial direct evidence of discriminatory intent, including, among other things, statements by the defendant's managers and members of the board of directors that they wanted a president in the 45–50 year range; that they weren't seriously considering plaintiff because they wanted someone in his or her mid to late forties; that they wanted a "younger man" for president; and that they suggested that the age requirement of 45–50 be included in the job profile.

In this case, plaintiff relies on the *McDonnell Douglas* presumption for her prima facie case. In addition, plaintiff has produced some evidence to rebut defendant's stated legitimate non-discriminatory reasons including:

(1) The survey on which Ertman purportedly relied in deciding not to promote plaintiff was not released until March, April or May of 1994.[9] Therefore, Ertman could not have based his decision not to promote plaintiff to positions that became available before mid-March 1994, on that survey.

(2) Plaintiff also responds to Swinford's statements regarding her alleged inability to take risks. Plaintiff points to Swinford's deposition testimony where he states that after July 1993, she had resolved this problem. Swinford then recommended plaintiff to the review board.

Plaintiff also offers the following additional evidence of her claim:

(1) Plaintiff relies on comparisons of her performance evaluations with those of candidates who were promoted to show that she received equal or better ratings in many categories. These evaluations suggest that plaintiff may have been as or better qualified for an RGM position than those promoted

---

**9.** The uncertainty about the release date of the survey stems from the conflicting testimony about when the survey was conducted. It is known that the results are usually released four to eight weeks after the survey is taken, but it is uncertain whether the survey was done in February or March.

and raises an issue of fact as to why plaintiff was overlooked for promotion.

(2) Plaintiff relies on a statement Stewart allegedly made to Swartz and that Swartz told Swinford regarding plaintiff's "round table" interview that Stewart allegedly said that she would take plaintiff anywhere as a ARGM but not as an RGM. This evidence may be neutral as to race discrimination, but is susceptible to more than one inference.

■ (3) Plaintiff also relies on statistical evidence regarding the number of minorities employed and promoted during Stewart's time as mega zone vice president.[10] According to plaintiff, during Stewart's tenure from 1991–1994, the number of black RGM's decreased by 50%. Defendant had no black management employees in the Portland market.

(4) Finally, plaintiff relies on changing explanations by Ertman as to why she was not promoted. Plaintiff avers that changing explanations during the course of a case may demonstrate that defendant's stated reasons are pretexts. See Howard v. BP Oil Co., Inc., 32 F.3d 520, 526 (11th Cir.1994) ("identification of inconsistencies in the defendant's testimony is evidence of pretext.")

In response, defendant maintains that during the years in question, it was phasing out the position of RGM in favor of other supervisory positions, and that the decrease in RGMs must be considered in that light. Additionally, defendant criticizes plaintiff's statistical analysis, arguing that it does not take into account standard deviation, correlation coefficients or regression coefficients. The accuracy and value of this evidence is, however, a fact intensive question that must be decided in pretrial proceedings or on a fully developed record at trial.

In summary, plaintiff has produced evidence sufficient to create a material issue of fact as to whether defendant's failure to promote her was based on racial discrimination. Therefore, summary judgment is denied on plaintiff's Title VII claim.

*Section 1981 Claim*

■ Plaintiff also alleges that defendant's failure to promote her violates 42 U.S.C. § 1981.[11] Plaintiff may seek remedies for violation of § 1981 as well as for violations of Title VII because "Title VII and section 1981 are overlapping but independent remedies for racial discrimination in employment." *Lowe,* 775 F.2d at 1010 (citing *Johnson v. Railway Express Agency,* 421 U.S. 454, 461, 95 S.Ct. 1716, 1720–21, 44 L.Ed.2d 295 (1975)). Furthermore, " 'the same standards are used to prove both claims' and facts sufficient to give rise to one are sufficient to give rise to the other." *Lowe,* 775 F.2d at 1010 (citing *Gay v. Waiters' and Dairy Lunchmen's Union Local No. 30,* 694 F.2d 531, 537 (9th Cir.1982)). Accordingly, because summary judgment is inappropriate on plaintiff's Title VII claim, summary judgment is also inappropriate on her § 1981 claim.

*State Law Discrimination Claim*

■ Plaintiff also alleges that defendant's conduct in failing to promote her violated O.R.S. 659.030.[12] Although under Oregon law the burden shifting analysis of *McDonnell Douglas* does not apply to claims under

---

10. It is not apparent whether plaintiff intends the statistical information to bolster her prima facie case or to demonstrate that defendant's stated reasons are pretexts. However, a plaintiff may use statistical evidence for either purpose. The Ninth Circuit in *Diaz v. American Telephone & Telegraph,* 752 F.2d 1356 (1985), stated "[s]tatistical evidence is unquestionably relevant in a Title VII disparate treatment case. Statistical information is helpful in establishing a prima facie case * * * [a] plaintiff is also entitled to use statistical evidence to show that a defendant's articulated nondiscriminatory reason for the employment decision in question is pretextual." *Id.* at 1362–63.

11. 42 U.S.C. § 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every state * * * to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens * * *.

42 U.S.C. § 1981(1).

12. O.R.S. 659.030 makes it an unlawful employment practice "[f]or an employer, because of an individual's race * * * to discriminate against such individual in * * * terms, conditions or privileges of employment." O.R.S. 659.030(1)(b).

O.R.S. 659.030, *see City of Portland v. Bureau of Labor and Ind.*, 298 Or. 104, 690 P.2d 475 (1984), the amount and type of evidence that plaintiff must produce to survive summary judgment under O.R.S. 659.030 is substantially similar to that required under Title VII. For the reasons stated above, summary judgment on plaintiff's state law claim is also denied.[13]

## CONCLUSION

Defendant's motion for summary judgment (# 65) is denied. Defendant's motion to strike (# 88) is denied as moot. Defendant's motion in limine (# 63) is denied as moot.

---

**13.** Defendant made a motion to strike certain testimony and evidence. The motion (# 88) is moot. Defendant also brought a motion in limine (# 63) regarding certain evidence. Plaintiff did not use this evidence in the summary judgment proceeding, accordingly defendant's motion in limine is moot. However, defendant may raise the same objections to the evidence at time of trial.