Pamela LAWSON, Plaintiff—Appellant,

v.

REYNOLDS INDUSTRIES INCORPO-RATED; Teledyne Reynolds, Inc.; Teledyne Investment, Inc.; Teledyne Technologies Incorporated; David M. McCormick, Defendants—Appellees.

No. 06–55449.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 2007.

Filed Jan. 10, 2008.

B. Fletcher, Circuit Judge, filed opinion dissenting in part.

Tyron J. Sheppard, Esq., Los Angeles, CA, for Plaintiff–Appellant.

Joseph L. Greenslade, Esq., Stephanie Berrington McNutt, McKenna & Cuneo, Los Angeles, CA, for Defendants–Appellees.

Before: B. FLETCHER and RYMER, Circuit Judges, and BEISTLINE *, District Judge.

## MEMORANDUM **

Pamela Lawson appeals summary judgment for her former employer, Reynolds Industries, Inc. and Teledyne Reynolds (collectively, "Reynolds"),[1] on retaliation claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5 *et seq.*; 42 U.S.C. § 1981; and the California Fair Housing and Employment Act, Cal. Gov't Code §§ 12940 *et seq.* (FEHA). We affirm.

### I

Lawson's Title VII claim was untimely as the district court could find that the "2002" date on the original letter was a typo and that the letter was instead signed and mailed on September 8, 2003. Her complaint was filed months after this. *See Payan v. Aramark Mgmt. Serv., Ltd.,* 495 F.3d 1119 (9th Cir.2007).

### II

■ Lawson failed to present evidence from which a reasonable jury could have found that her termination was retaliatory or that Reynolds's stated reasons for terminating her were pretextual. In the circumstances, no inference of retaliation arises on account of the nearly twelve-month gap between her protected complaints and termination. *See Manatt v. Bank of America,* 339 F.3d 792, 802 (9th Cir.2003). At oral argument counsel suggested that the last retaliatory act occurred during the meeting with McCormick and the counselor, but we see no basis in the record for so concluding. Lawson points to no other evidence seriously calling the legitimacy of Reynolds's reasons into question. She admitted initialing drawings that contained errors and does not controvert the substance of McCormick's account of insubordination at their July 16, 2002 session with Dr. Corman.

To the extent that she relies upon insensitive comments by co-employees, the employees were not at a level that could reflect corporate culture; the comments were isolated; and the employees were reprimanded. *See Clark County School District v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ("'[A] recurring point in our opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' "); *Manatt,* 339 F.3d at 799 ("[T]wo regrettable incidents occurring over a span of two-an-a-half years, coupled with . . . other offhand remarks made by . . . co-workers and [a] supervisor, did not alter the terms and conditions of . . . employment.").

Lawson relies on *Yanowitz v. L'Oreal USA, Inc.,* 36 Cal.4th 1028, 1051 n. 9, 32 Cal.Rptr.3d 436, 116 P.3d 1123 (2005), but the conduct there was far more egregious than here. As *Yanowitz* recognized: "Mi-

---

\* The Honorable Ralph R. Beistline, United States District Judge for the District of Alaska, sitting by designation.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Lawson also named Teledyne Investment, Inc., Teledyne Technologies, Inc., and David M. McCormick as parties, but pursues the action only against Reynolds and Teledyne Reynolds on appeal.

nor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of [the FEHA]." *Id.* at 1054–55, 32 Cal.Rptr.3d 436, 116 P.3d 1123.

### III

█ Referring Lawson for counseling was not an adverse employment action; Lawson herself thought the sessions with Dr. Corman were meaningful. Nor were the terms and conditions of her employment affected by the somewhat negative performance evaluation in 2002. While an undeserved negative performance review may constitute an adverse employment action, *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.1987), Lawson was given the highest or second-highest rating available in eight of ten categories, and the review was consistent with reviews she received before making any complaints in the areas identified as needing improvement.

1. In Lawson's 2002 performance appraisal her supervisor, Dave McCormick, stated that "company cultures sometimes foster personality attributes in some that are not always the most desirable, but nevertheless exist." In addition to serving as a concession of employee attitudes, this statement undermines the majority's position that the derogatory comments and actions of Lawson's co-employees were isolated and that "the employees were not at a level that could reflect corporate culture." Even if they were low-level employees, a company representative stated that those comments resulted from a compa-

### IV

The district court did not abuse its discretion by excluding a statement in Lawson's declaration that was without foundation. Fed.R.Civ.P. 56(e).

AFFIRMED.

B. FLETCHER, Circuit Judge, dissenting in part:

This is an unusual case: Reynolds, the employer, in effect concedes that among its employees are many unwilling to accept either a woman or a Black (Lawson is both) in a supervisory position even though she is competent and capable.[1] Lawson was expected to accept abuse and humiliation if she were to keep her job as a supervisor. She was expected to get along and go along. She was the one upon whom retaliation could be visited without reprisal, rather than those who taunted and disrespected her. I therefore dissent from Part II of the memorandum disposition.

The district court granted Reynolds's motion for summary judgment on Lawson's retaliation claims because it concluded that Lawson had failed to produce evidence that the legitimate, non-retaliatory reasons proferred by Reynolds for terminating her employment were pretextual.[2] We review this decision *de novo. Lindahl*

ny culture that fosters discriminatory attitudes and behavior.

2. Although Lawson brings suit under both federal and state law, her claims can be analyzed simultaneously because the same summary judgment test applies in both the § 1981 and FEHA contexts. *Manatt v. Bank of Am., NA,* 339 F.3d 792, 801 (9th Cir.2003) (§ 1981); *Winarto v. Toshiba Am. Elec. Components, Inc.,* 274 F.3d 1276, 1284 (9th Cir. 2001) (FEHA). The only difference is that gender discrimination is not actionable under § 1981. *Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586; 49 L.Ed.2d 415 (1976).

*v. Air France,* 930 F.2d 1434, 1436 (9th Cir.1991). In so doing, we are required to accept Lawson's evidence as true and draw all reasonable inferences in her favor. *Id.* at 1437. We must also keep in mind that because of the elusive, yet fact-based nature of an employer's true motivation, summary judgment will usually be inappropriate in retaliation cases. *Yartzoff v. Thomas,* 809 F.2d 1371, 1377 (9th Cir. 1987).

Absent direct evidence of the employer's discriminatory motive, pretext can be shown by presenting evidence of specific facts showing that the employer's explanation is not credible. *Lindahl,* 930 F.2d at 1438. The evidence must be "specific and substantial," *Manatt v. Bank of Am., N.A.,* 339 F.3d 792, 801 (9th Cir.2003), but as our case law makes clear, substantial does not mean overwhelming. Summary judgment must be denied if Lawson produced *any* evidence beyond that necessary to establish a prima facie case of retaliation.[3] *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 732–33 (9th Cir.1986) (holding that summary judgment was precluded where plaintiffs alleged in their declarations that they were "the only persons within their respective departments who were dismissed during the ... layoffs").

Reynolds's proffered reasons for terminating Lawson's employment were dereliction of duty and insubordination. Specifically, Reynolds claims that Lawson's practice of initialing drawings with errors, in violation of company policy, was a dereliction of duty justifying termination. Reynolds also claims that Lawson was insubordinate because she refused to "comply with a reasonable request to work on improving [her] interpersonal skills," and refused to leave a July 16, 2003 meeting

with her supervisor, Dave McCormick, and counselor Barbara Coman in which Lawson allegedly became "openly hostile."

The record contains sufficient evidence that a rational factfinder could find that the reasons proffered to justify Lawson's termination were pretextual. First, there is no evidence that Lawson approved drawings that contained errors. Rather, Lawson claims that initialing the drawings was her way of requiring her subordinates to fix the errors and resubmit the drawings for approval. Given Lawson's explanation of her procedure and the fact that McCormick's own investigation did not turn up a single drawing that was initialed in violation of company policy, a jury could conclude that dereliction of duty was not a credible reason for terminating Lawson's employment.

The record also indicates that Lawson complied with the company's requirement that she attend counseling sessions to work on her interpersonal skills. Lawson herself described these sessions as "meaningful," indicating that she was genuinely working on improving her communications skills so that she could become a better manager. Thus a factfinder could conclude that the first claim of insubordination was not a credible reason for terminating Lawson's employment.

With respect to the July 16, 2003 meeting, whether Lawson was insubordinate is a genuine issue of fact that must be determined by the factfinder. Although Lawson's declaration does not specifically refute McCormick's allegations that she refused to leave the room and became angry, it does provide context for her alleged behavior. According to Lawson, "Mr. McCormick began [the meeting]

---

**3.** A prima face case is established by showing that plaintiff (1) engaged in protected activity, (2) suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision. *Manatt,* 339 F.3d at 800.

with an authoritative demanding demeanor that shocked me, especially since this was supposed to be a helpful counseling session." A factfinder should determine what actually happened at the meeting, including whether Lawson was insubordinate or whether her behavior was justified. For example, if her response was provoked, a reasonable factfinder could conclude that Reynolds's justification for firing her was pretextual.

A factfinder might also find that the alleged claim of insubordination was pretextual if it was found that the reasons why Lawson was referred to counseling were suspect.[4] McCormick first recommended that Lawson attend counseling after Lawson complained about a conflict with Mr. Avakian, one of "several incidents when it was obvious that [she] was not going to be accepted as a leader because of [her] race and gender." The requirement was ultimately imposed one week after Reynolds concluded its investigation into Lawson's complaints of racial and gender discrimination, and the December 4, 2002 memorandum imposing the requirement explicitly states that the requirement was imposed as a result of the investigation. Furthermore, none of the non-African–American men who were found to be harassing Lawson were sent to counseling. Based on these facts, a reasonable factfinder could conclude that Lawson was required to attend counseling in retaliation for her complaints of racial and gender bias that was admitted to exist at Reynolds. Since McCormick's own statements make clear that but-for the events of the July 16, 2003 meeting, Lawson would not have been terminated, what Reynolds's actual reasons for requiring that she attend counseling were, raises a genuine issue of

material fact regarding the motive behind the termination.

Lawson has presented sufficient evidence to permit a factfinder to disbelieve Reynolds's reasons for the discharge and conclude that it was actually motivated by a desire to retaliate against her for complaining about racial and gender bias. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918 n. 2 (9th Cir.1996). Therefore summary judgment was inappropriate and I would reverse the district court order and remand this case for a trial on the merits.

---

4. Even if requiring Lawson to attend counseling does not constitute an adverse employment action the motivation behind imposing the requirement is still relevant in evaluating whether the reasons for the termination were pretextual because the termination was the direct result of events that transpired during the counseling sessions.