Marcia BAUER, Plaintiff–Appellant,

v.

BOARD OF SUPERVISORS, Navajo County; Percy Deal, in his official capacity only; Jesse Thompson, in his official capacity only; Tommy Tee Thompson, in his official capacity only; Lewis Tenney, in his official capacity only; Larry Vicario, in his official capacity only; Gary Butler, Sheriff of Navajo County, in his official capacity only, Defendants—Appellees.

No. 01–15639.

D.C. No. CV–99–01629–JWS.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 2002.

Decided Aug. 8, 2002.

Before HAWKINS and SILVERMAN, Circuit Judges, and RESTANI, Judge.*

MEMORANDUM **

Marcia Bauer appeals the district court's grant of summary judgment to defendants-appellees (collectively the "County").[1] After resigning from her position as detention officer at the Navajo County Jail, Bauer brought suit against the County alleging constructive discharge as a result of gender and age discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et*

---

* Honorable Jane A. Restani, Judge, United States Court of International Trade, *sitting by designation.*

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

[1] Bauer brought suit against Navajo County Board of Supervisors, each board member individually in their official capacity, and Sheriff Gary Butler in his official capacity.

seq. ("Title VII"), and the Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. §§ 621 et seq. ("ADEA"). Bauer also claimed retaliation for a previous discrimination complaint. Bauer argues that the district court erred in concluding that: (1) the continuing violations doctrine did not apply to claims asserted in a previous charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"); (2) Bauer did not present genuine issues of material fact supporting her claims of constructive discharge and retaliation.

## FACTUAL BACKGROUND

Bauer was hired by the County to serve as a detention officer in September 1990. Bauer was promoted from detention officer to detention shift supervisor in 1994. In April 1996, the County hired Rod Bottoms to be commander of the Navajo County Jail. At the time of Bottom's hire, Bauer was fifty-five (55). On June 30, 1996, two months after Bottoms was hired, Bauer accepted a "voluntary" demotion to her previous position as detention officer. The reason for the demotion is unclear.[2]

Bauer was disciplined following two unrelated incidents in early 1997. On February 25, 1997, Bauer released the wrong prisoner while assigned to booking and transportation duties.[3] On March 22 and 24, 1997, Bauer entered inappropriate comments while typing inmate rosters.[4] Bauer admitted to both.

On April 22, 1997, Bauer was suspended without pay for six days, reassigned to another facility in a non-supervisory capacity, and placed on probation for one year. The day after the disciplinary ruling, Bottoms sent a letter to Bauer's supervisors, Lt. Duran and Sgt. Eslinger, instructing that, among other things, Bauer not be assigned to the booking area or court transportation duties. Bauer initially accepted that discipline was appropriate[5] and did not challenge the decision internally.[6]

In July 1997, Bauer filed a charge of discrimination with the EEOC ("1997 charge"). The 1997 charge alleged gender and age discrimination. Bauer claimed

2. The Personnel Action Form gives no reason for the demotion. Bauer does not specifically allege discrimination as the reason for the demotion but does claim that she initially refused the voluntary demotion and agreed under duress.

3. At the time of the mistaken release, there were two prisoners in the jail named Jose Lopez. One of the prisoners was listed as "Jose R. Lopez" while the second was listed only as "Jose Lopez." The files contained pictures and descriptions of the prisoner. The prisoner released was a material witness in a statewide drug investigation. Id.

4. In typing inmate rosters, Bauer admits remarking that inmates would not be released until "death", until "they die", until "hell freezes over" or never.

5. With regard to the two 1997 incidents, Bauer agrees that discipline was appropriate.

When asked about the incidents and subsequent investigation, Bauer stated:

> I told Sheriff Butler I did it. He told me he had to discipline me. I said, "I understand that. I have no problems with that. I did wrong." And I didn't bring anybody else into it, either, the fact other people had released people. I did wrong. I felt like I should take whatever come down my way. Bauer depo. at 74–75.

6. Bauer admits that she was aware of grievance procedures but elected not to pursue them.

> Q: Did you appeal -
> [Bauer] A: No.
> Q: No. Did take a look at that policy at all?
> A: No. I had no grievance. I did what I did, bottom line.
> Q: That's why you didn't appeal?
> A: Exactly

Bauer depo. at 79.

that she had been "subjected to offensive, derogatory, female-based jokes and comments." The core of Bauer's complaint, however, was that she had been disciplined differently from other officers that had committed similar errors. The EEOC dismissed the claim and issued a Notice of Right to Sue letter on September 25, 1997. The letter stated that any lawsuit "must be filed *WITHIN 90 DAYS* from your receipt of this notice; otherwise your right to sue based on this charge is lost." Bauer did not pursue the 1997 charge.

Bauer completed her one year probationary period on or about May 1, 1998. On May 13, 1998, Bauer was asked by Sgt. Brandon Gardner to work in the booking department. Bauer claims that she was then told that she was not allowed to work in the booking area, despite the end of the probationary period. Bauer claims that she was told that Commander Bottoms insisted that her duties continue to be restricted to the inmate section of the jail ("POD duty").[7]

Once informed of Bottom's order, Bauer claims to have experienced a "severe elevation in blood pressure." Bauer informed her supervisor, Lt. Burke, of her condition. Bauer claims that Burke told her that she could not leave unless she resigned. Bauer admits that she was given the option of staying at work and obtaining county-provided medical treatment, but declined. Bauer departed without discussion and submitted her written resignation the following day. Two weeks later, Bauer requested that her resignation be rescinded and that she be allowed to return to work. That request was denied.

Bauer filed a second charge of discrimination with the EEOC on November 3, 1998 ("1998 charge").[8] The 1998 charge alleged discrimination and retaliation based on and in continuation of the previous discrimination alleged in the 1997 charge. The EEOC again dismissed the claim and, on June 10, 1999, issued a second Notice of Right to Sue letter.

Bauer filed suit in connection with the 1998 charge in federal district court on September 9, 1999. Bauer alleged age and gender discrimination in violation of Title VII and the ADEA. Bauer also claimed retaliation for the 1997 charge. After answering, the County moved for summary judgment arguing that (1) any claims associated with the 1997 charge were precluded by the ninety (90) day statute of limitations; (2) Bauer's voluntary resignation precluded any claim of wrongful termination; and (3) Bauer did not allege facts sufficient to establish constructive discharge.

Stating that Bauer experienced "no incidents of perceived discrimination" during the one year probation period, the court found that "[t]o the extent that Bauer's suit is attempting to allege claims related to her discipline in 1997, her claims are time-barred." The court then held that the continuing violations doctrine did not otherwise apply to the 1997 claims because there was no evidence of an "ongoing, continuous pattern of discrimination." The court next found that, because Bauer understood that she could remain and seek county-supported medical treatment for her condition, Bauer voluntarily resigned. The court rejected Bauer's claim of retaliation and granted summary judgment for

---

7. Bauer had been assigned to the inmate section of the jail for the entire probationary period.

8. The 1998 charge was originally limited to a retaliation claim. In March 1999, Bauer later amended the 1998 charge to include claims of sex and age discrimination.

defendants-appellees. This appeal followed.

## STANDARD OF REVIEW

The court reviews "a grant of summary judgment *de novo* and must determine whether the district court correctly applied the law and if, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact." *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998). Summary judgment for a defendant is appropriate when a plaintiff fails to make a sufficient showing to establish the existence of an essential element on which she has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

### A. Continuing Violations Doctrine

■ To properly file suit under Title VII, a plaintiff must first exhaust the administrative remedies available under 42 U.S.C. § 2000e–5. *See, e.g., Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir.1988). Under the statute, a plaintiff must initially file a discrimination charge with the EEOC and, if dismissed, shall receive a right-to-sue letter. 42 U.S.C. § 2000e–5(f)(1). Once that letter is received, Plaintiff must file any related Title VII and ADEA court action within ninety (90) days of receiving the letter. 42 U.S.C. § 2000e–5(f)(1); 29 U.S.C. § 626(e). Bauer admits that she consciously did not pursue her 1997 claims after the 1997 charge was dismissed. Because Bauer did not timely file suit within the requisite time, the underlying claims would ordinarily be time-barred. Bauer argues that the 1997 claims are actionable under the continuing violations doctrine.

The continuing violations doctrine allows courts to consider claims that would ordinarily be time barred as long as the untimely incidents are part of an ongoing unlawful employment practice. *See, e.g., Anderson v. Reno*, 190 F.3d 930, 936 (9th Cir.1999); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir.1998). To assert the continuing violations doctrine, a plaintiff must show that the untimely incidents were: (1) part of an ongoing pattern of discrimination; and (2) that the County continued this pattern into the relevant limitations period. *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990).

In *National Railroad Corp. v. Morgan*, the Supreme Court recently reviewed this circuit's application of the continuing violations doctrine and found a meaningful distinction between claims based upon discrete discriminatory acts (such as "termination, failure to promote, denial of transfer, or refusal to hire") and hostile work environment claims. —— U.S. ——, ——, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106, —— (2002) *rev'g in part and aff'g in part*, 232 F.3d 1008 (9th Cir.2000). With respect to discrete discriminatory acts, the court determined that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" for the purposes of Title VII. *Id.* at 2072. Because each discrete act starts "a new clock" for filing charges, the Court held that "discrete discriminatory acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*." *Id.* at 2072 (emphasis added). In short, the continuing violations doctrine may not be applied to incorporate untimely claims for discrete discriminatory acts even though they may be related to a timely claim.

Alternatively, the Court found that incidents that would otherwise be time barred

may be considered in the context of a hostile work environment claim. *Id.* at 2073. The Court reasoned that such claims are based on the "cumulative affect of individual acts" and, by nature, involve repeated acts. *Id.* at 2073. Because a hostile work environment claim is, by statute, comprised of "separate acts that collectively constitute one 'unlawful employment practice,' " the Court ruled that, "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of *any act* that is part of the hostile work environment." *Id.* at 2074–75 (emphasis added).

While Bauer's complaint alleges an overall pattern of discrimination, Bauer did not expressly assert a hostile work environment claim in either the EEOC charge or complaint. Instead, Bauer alleged (1) age discrimination; and (2) retaliation. Bauer's 1998 claim was largely based upon her continued restriction to POD duty after the termination of her probationary period and her subsequent resignation. While Bauer vaguely alleges additional discriminatory acts during 1997 and 1998, Bauer does not specifically argue that the cumulative effect created a hostile work environment under Title VII.[9]

Moreover, the core of Bauer's 1997 discrimination claim was that she was disciplined more severely than other detention officers that committed similar offenses. In addition to the 1997 discipline, Bauer alleges that she was forced to accept a voluntary demotion in 1996. Both Bauer's 1997 discipline and 1996 demotion fall squarely within the category of discrete discriminatory acts discussed by the Court in *National Railroad.* — U.S. at —, 122 S.Ct. at 2073. Because the Court held that a plaintiff may not invoke the continuing violations doctrine to incorporate otherwise untimely discrete discriminatory acts, we find that Bauer's 1997 claims are time barred.

## B. Constructive Discharge

■ Bauer claims that her workplace conditions were so intolerable that her resignation rises to the level of constructive discharge. Constructive discharge is an adverse employment action for the purposes of Title VII. *Jordan v. Clark,* 847 F.2d 1368, 1377 (9th Cir.1988). Constructive discharge occurs when an employer intentionally creates, or knowingly permits, conditions so intolerable that they effectively force an employee to resign. *Draper v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1110 (9th Cir.1998). The standard for determining constructive discharge is an objective one. *Watson v. Nationwide Ins., Co.,* 823 F.2d 360, 361 (9th Cir.1987). To survive summary judgment on a claim for constructive discharge, Bauer must show that "there are issues of fact as to whether a reasonable person in her position would have felt that she was forced to quit because of intolerable or discriminatory work conditions." *Schnidrig v. Columbia Machine, Inc.,* 80 F.3d 1406 (9th Cir. 1996), *cert. den.* 519 U.S. 927, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996) (quoting *Stein-*

---

9. Whether this particular series of incidents rises to the level of a hostile work environment, as defined under Title VII, is a separate analysis than that before the court. To determine whether the County created or permitted a hostile work environment, the court would be required to analyze the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humili-

ating; or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The parties have not briefed the arguments in this context and we decline to analyze the issue *sua sponte.*

*er v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir.1994)).

■ Bauer argues that her resignation was caused by a pattern of discriminatory treatment that spanned over two years and culminated in the events of May 13th and 14th, 1998. The facts surrounding her resignation are not in dispute. Bauer left the detention center on May 13th after complaining of elevated blood pressure. Bauer claims that the condition developed when she was told that Bottoms ordered that she continue to be restricted to POD duty [10] despite the conclusion of her probationary period. Bauer concedes that she was given the option of obtaining county-provided medical attention but elected to leave nonetheless. Bauer did not seek any medical attention [11] and submitted a letter of resignation the following day. Bauer's brief letter did not contain an explanation. Two weeks after resigning, Bauer requested reinstatement but that request was denied.

As indicated, Bauer may not rely on the 1997 events, but there is also no evidence of an officer with such a combination of infractions being treated differently. The County argues that Bauer's continued restriction to POD duty in 1998 was an isolated event and not discriminatory. Although Bauer alleged incidents other than her restriction to POD duty, the record provided, including Bauer's own statements, fails to support the existence of other discriminatory acts during the one-year probationary period. For example, Bauer vaguely claims that Bottoms silently stood over her on several occasions during the probationary period. We note that Bauer's deposition in support of this claim does not discuss several occasions and is, instead, entirely limited to May 13th.[12] As an alternative example of discrimination, Bauer cites to Lt. Reynolds' general statement that Bottoms yelled at female employees.[13] Reynold's statement does not specifically identify a particular situation or provide sufficient context to reasonably construe any "yelling" as discriminatory. Bauer also claims that Bottoms instructed supervisors to write her up as much as possible, but Bauer admits there were no write-ups during the one-year probationary period:

> Q: During the time that you were on probation, after the internal investigation, were you written up, to your knowledge, during that period of time.
>
> [Bauer] A: Not that I know of. If I was, I don't remember it.

Bauer depo. at 25, lines 21–25. Upon review, we find that Bauer has not presented viable evidence of discrimination. The act that comes closest to raising material facts as to a claim of discrimination is Bauer's continued restriction to POD duty on May 13th, 1998.

10. Bauer alleges that POD duty is stressful because you are working with inmates all day. Bauer claims that, when informed that her restriction to POD duty would continue beyond the probationary period, she experienced a severe elevation in blood pressure.

11. Bauer concedes that she did not seek any outside medical treatment for the elevated blood pressure.

12. "I said 'Other than [Bottoms] coming up behind me and standing so close that I can feel his breath on my neck, what did I do wrong yesterday?' " Bauer depo, at 97 lines 4–6. Bauer does not refer to several instances, but rather is specifically discussing the events of May 13, 1998.

13. In support of her gender discrimination claims, Bauer cites to the deposition of Lt. Reynolds: "I've witnessed Commander Bottoms yelling, screaming, threatening females." Reynolds depo. 17, lines 9–11.

The County argues that Bauer's continued restriction from the front desk was not discriminatory but was instead a supervisory decision based on Bauer's release of the wrong inmate and improper comments, both of which occurred while on the front desk. On the whole, the evidence demonstrates that Bottoms was, at best, concerned that Bauer might make additional mistakes and, at worst, angry that Bauer had not been fired after releasing the wrong prisoner and making inappropriate comments. While Bottom's response may be inappropriate, it is not necessarily discriminatory. There is no evidence to suggest that Bauer was restricted because of her age or gender.

Assuming Bauer's continued restriction was unlawfully discriminatory, we find it insufficient to support a claim of constructive discharge. First, a single isolated incident is usually insufficient as a matter of law to support a finding of constructive discharge. *See, e.g., Schnidrig,* 80 F.3d at 1411; *Sanchez v. City of Santa Ana,* 915 F.2d 424, 431 (9th Cir.1990). *But see Little v. Windermere Relocation, Inc.,* 265 F.3d 903, 911 (9th Cir.2001) (assuming *arguendo* that three rapes in the course of one evening constitute a single isolated incident). Second, we find it important to note that Bauer asked to be reinstated to the same position without requesting any change in her duties or job conditions, including any change of supervisor. That request indicates that Bauer's work conditions were not so intolerable that she did not want to return. *French v. Eagle Nursing Home, Inc.,* 973 F.Supp. 870, 877–78 (D.Minn.1997) ("The only logical conclusion that the Court can draw from [plaintiff's] wish to return to [employer] is that the working conditions there were in fact not intolerable.").

Lastly, the question of constructive discharge ultimately turns on whether a reasonable person would have felt compelled to resign in the same situation. Bauer had several options besides resignation: (1) stay and seek county-provided medical attention; (2) seek permission to leave from a higher authority; (3) leave the workplace requiring the County to accept the decision or terminate her; and perhaps (4) file a formal grievance or EEOC charge. We find that a reasonable person would have sought alternatives in this particular circumstance and, therefore, Bauer's resignation does not rise to the level of constructive discharge.

## C. Retaliation

█ Bauer argues that the district court erred in concluding that she failed to raise a material fact in support of her retaliation claim. A Title VII retaliation claim requires that Bauer show: (1) that she was engaged in a protected activity; (2) that she was subsequently subjected to an adverse employment action; and (3) that there is a causal link between the activity and adverse action. *Hashimoto v. Dalton,* 118 F.3d 671, 679 (9th Cir.1997). Defendants concede that Bauer, in filing the 1997 charge, was engaged in a protected activity. Bauer argues that her restriction to POD duty after probation was an adverse action in retaliation for the 1997 charge.

The County argues that POD duty is one of a detention officer's normal duties. Bauer has, however, submitted deposition evidence from Lt. Reynolds that suggests that Bauer is the only officer to be restricted to POD duty. The County further argues, and the district court agreed, that the duties Bauer was told to perform were typical and ordinary for a detention officer. While POD duty may be one of a detention officer's typical duties, this argument ignores the fact that being restricted from performing other normal duties may, in

itself, constitute an adverse change in conditions of employment. In the context of a county jail, where officers ordinarily rotate positions, being permanently posted to the position with the most inmate contact could reasonably be construed as an adverse employment action.

Even if the restriction qualifies as an adverse employment action, Bauer's claim fails because there is no evidence suggesting a causal link between those restrictions and her 1997 charge. In support of her retaliation claim, Bauer cites to deposition testimony by Lt. Mark Reynolds:

> Q: Do you believe Commander Bottoms was angry that Marcia Bauer did not get fired in April of 1997?
>
> [Reynolds] A: Yes. Because I believe that is what his recommendation was, and the Sheriff chose to give her one year probation.

Reyonolds depo. at 38, lines 16–24. While the statement supports the conclusion that Bottoms was angry that Bauer was not fired after her 1997 mistake and misconduct, it does not suggest that Bottom's restrictions were imposed because she filed the 1997 charge. Without more, Bauer has failed to show the causal connection necessary to prove retaliation.

AFFIRMED