**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 08 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARVIN BAGLEY, Jr., | No. 13-17386 |
| Plaintiff - Appellant, | D.C. No. 2:12-cv-01429-SRB |
| v. | |
| BEL-AIRE MECHANICAL INCORPORATED, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted January 8, 2016
San Francisco, California

Before: WALLACE, NOONAN, and BERZON, Circuit Judges.

This is an employment discrimination action. Bagley appeals from the

district court's order granting summary judgment to Bel-Aire as to his claim of

retaliation under 42 U.S.C. § 1981. We now reverse, and hold that (1) Bel-Aire

failed to meet its burden to proffer a legitimate non-discriminatory reason for

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

terminating Bagley, and (2) Bagley has introduced sufficient evidence to raise a triable issue as to whether his termination was retaliatory.

Bagley, an African-American man, began working for Bel-Aire on March 14, 2008 as an apprentice. In April of 2008, Bagley was transferred to the Dial project and was assigned to pipefitting work. On May 19, 2008, Bagley's supervisor at the Dial project, Vernon McBride, approached Bagley while he was working, put a noose in Bagley's face and told him, among other things: this is "a hangman's noose; this is what they used to hang people with in the olden days." On May 28, 2008, Bagley reported the incident to Will Guy, the superintendent of the Dial project and McBride's direct supervisor. Guy terminated McBride shortly thereafter.

In June of 2008, Bagley was transferred from the Dial project to the Banner Project over his objections. Guy explained that many of McBride's friends and family members were working on the Dial project and were upset with Bagley for registering the complaint that resulted in McBride being laid off, and that he had to be transferred for his own physical safety. About a month later, on July 3, 2008, Bagley was informed that he was being laid off effective immediately.

Our court reviews a district court's grant of summary judgment *de novo*. *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1408 (9th Cir. 1996). Viewing

2

the evidence in the light most favorable to the nonmoving party, our court must determine whether there are any genuine issues of material fact which would preclude summary judgment, and whether the district court correctly applied the substantive law. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003).

## I.    Timeliness

Retaliation claims under § 1981 are subject to a four-year statute of limitations. *See Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1007 (9th Cir. 2011); *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004); 28 U.S.C. § 1658. The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky v. City & Cty. of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008) (quoting *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004)). Because Bagley filed this action three years, eleven months, and 29 days after being informed of his termination, his cause of action for retaliation based on his termination is timely. *Del. State Coll v. Ricks*, 449 U.S. 250, 258 (1980).

However, Bagley's involuntary transfer occurred outside the four-year statute of limitations and therefore cannot serve as a predicate legal injury to

support an independent claim of retaliation.[1] Nonetheless, while a time-barred claim has no "present legal consequence[], . . . [i]t may still constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Evidence of time-barred acts may be "offered for its probative value in assessing whether the employer's justifications for its present conduct lack credibility" and may also serve "as indirect proof of the employer's intent to discriminate." *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002). Under Bagley's theory of the case, he was transferred to a dead-end project in retaliation for registering a complaint only a few days earlier. Indeed, Drew Schroder, Bel-Aire's operations manager, admitted that he knew that the Banner project was essentially finished at the time he transferred Bagley. Therefore, evidence surrounding Bagley's involuntary transfer remains relevant to show that Bel-Aire acted with a discriminatory motive when it terminated him only a month after transferring him.

---

[1]For the first time at oral argument, Bagley advanced the argument that his involuntary transfer claim is timely under the "continuing violation" theory. Oral Argument at 14:00-15:09, http://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000008851. However, the Supreme Court has rejected this precise argument. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

## II. Retaliation

"To prevail on a claim of retaliation, a plaintiff must show (1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action." *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *see also Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 800-01 (9th Cir. 2003). "[R]etaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

## A. Prima Facie Case

The burden of establishing a prima facie case is "not onerous"; the plaintiff must only introduce evidence that "give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). The parties agree that Bagley's complaint to Guy constitutes a "protected activity." As to the second element, termination—even when an employee has the opportunity to be rehired within days through his union—constitutes an adverse employment action. *See Vasquez v. Cty. of L.A.*, 349 F.3d 634, 646 (9th Cir. 2003); *Ray v. Henderson*, 217 F.3d 1234, 1241-43 (9th Cir. 2000). As to the third element, Bagley has shown a 36-day gap between the protected activity and the adverse

employment action, s*ee Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989), Guy's hostility to Bagley's complaint, *see Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894-95 (9th Cir. 2005),  and the continued availability of pipefitting work for apprentices for as long as five months after he was terminated.  This evidence, taken together, establishes a prima facie showing of but-for causation.

**B. Non-Discriminatory Reason**

Because Bagley has established the existence of a prima facie case, the burden of production shifts to Bel-Aire which "must present evidence sufficient to permit the factfinder to conclude that [it] had a legitimate, nondiscriminatory reason for the adverse employment action." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005). Bel-Aire contends that it laid off 300 people (nearly a third of its workforce) between the months of May and July of 2008, and that Bagley was selected to be laid off "based on his skill level and available work." Merely enumerating these two factors ("skill level" and "available work") relevant to the layoff decision without any explanation about how they relate to Bagley's particular case fails to meet the defendant's burden of production. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1094 (9th Cir. 2008). Accordingly, summary judgment was not warranted.

6

## C. Pretext

Summary judgment was also inappropriate because Bagley introduced sufficient evidence to create a triable issue of fact as to pretext.

First, Bagley has demonstrated a close "temporal proximity" between his complaint and his termination. *Bell v. Clackamas Cty.*, 341 F.3d 858, 865 (9th Cir. 2003). Second, he introduced evidence that his supervisor, Guy, was unsympathetic to his complaint. Guy testified that he had doubts about Bagley's sincerity, believed that he might have been "putting on a show," and thought that Bagley should have taken matters into his own hands rather than complaining about it; *see Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1071 (9th Cir. 2003). Third, Schroder admitted that there continued to be work at the Dial project for apprentices and pipefitters until December of 2008—five months after Bagley's discharge and six months after his involuntary transfer, and Guy stated that Bel-Aire was "way behind" at the Dial project at the time Bagley was transferred, particularly in the area where Bagley was working. This information casts doubt upon Bel-Aire's proffered explanation for Bagley's termination. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)). Fourth, Bagley also introduced evidence that he received excellent evaluations from his supervisors and

had been told he had a future with the company, evidence which further supports his theory that he was singled out for disfavored treatment because of his complaint. *See Boeing Co.*, 577 F.3d at 1051.

Finally, Guy's statement that Bagley's transfer was motivated by a desire to protect him from his co-workers could be interpreted as direct evidence of discriminatory intent. *Boeing Co.*, 577 F.3d at 1050. Defendant's suggestion that the views of line-level employees should not be attributed to the corporation is unavailing in light of the fact that a *supervisor* explicitly relied upon the animus of Bagley's co-workers as the primary reason justifying his transfer to a less desirable job site. *Cf. Lam v. Univ. of Haw.*, 40 F.3d 1551, 1560 n.13 (9th Cir. 1994).

## CONCLUSION

While Bagley has introduced sufficient evidence to survive summary judgment, we pause to note that this is not a one-sided case, and we therefore express no view as to the merits of Bagley's claim. A jury may very well credit evidence introduced by Bel-Aire and find in its favor. However, cases in this circuit emphasizing the low-bar an employment discrimination plaintiff must meet to avoid summary judgment are legion. *See e.g. Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000). Accordingly, we reverse the district court's order.

8

**REVERSED.**

*Bagley v. Bel-Aire Mechanical, Inc.*, No. 13-17386

WALLACE, Senior Circuit Judge, dissenting in part and concurring in part:

The majority is correct in all of its holdings except its conclusion that there is a genuine dispute of material fact as to whether Bel-Aire presented sufficient evidence of a legitimate, nondiscriminatory reason for transferring and ultimately laying off Bagley. I therefore dissent from that portion of the opinion, but concur in the rest. I also write separately to highlight the ways in which Bagley's counsel has distorted the record in his effort to establish a genuine dispute of material fact as to pretext.

## I.

The majority contends that Bel-Aire's reasons for transferring and laying off Bagley are insufficient in light of our court's opinion in *Davis v. Team Electric Co.*, 520 F.3d 1080 (9th Cir. 2008). In *Davis*, a female electrician filed a sex-discrimination complaint against her employer, Team Electric. *Id*. at 1087. Approximately two months later, Team Electric laid off a portion of its electricians, including Davis. *Id*. at 1087-88. Team Electric explained that "Davis was laid off, with sixteen other employees, for economic reasons." *Id*. at 1094. Team Electric, however, presented no evidence as to why Davis in particular was selected for layoff. *Id*. Our court held that Team Electric, having only cited generally to "economic" reasons for the layoff, did not meet its burden of

1

articulating a legitimate, nondiscriminatory reason because "[t]o meet its burden, the employer must explain why it selected the plaintiff in particular for the layoff." *Id*.

Unlike the employer in *Davis*, Bel-Aire not only pointed to an economic downturn for why it laid off Bagley, but it also explained why Bagley specifically was terminated. Drew Schroder, the Operations Manager and the individual in charge of staffing, explained that the Dial project had begun to wind down in May, and the pipefitters in Bagley's crew had completed their portion of the project. ER II 212; 39: 16-19; ER II 214; 46:10-25; 47:1-25; 48; 1-25; 49:1-2. Bagley, along with the rest of his crew of pipefitters, were working on the HVAC cooling system, a discrete area of the Dial project that had its own unique set of blueprints. ER II 214; 47: 13-25, 48:1-11. That area was finished in May. ER II 214; 46:10-11. Although a small number of pipefitters were employed after May, Schroder could not simply replace a pipefitter in a different area of the Dial project with Bagley. ER II 214; 46: 12-25, 47:1-11. The other project areas were staffed with their own crews, and each area, like the HVAC area, had its own unique set of blueprints. *Id*. It therefore would have been impractical for Schroder to remove a pipefitter who was already working in one area of the Dial project and replace that pipefitter with Bagley, who would have been unfamiliar with that area's blueprints. *Id*.

2

Moreover, while the evidence of Bel-Aire's general decline in work is not, standing alone, sufficient under *Davis* to establish a nondiscriminatory reason for Bagley's transfer and layoff, it nevertheless supports Bel-Aire's contention that it had a need to lay off Bagley due to a lack of available jobs. James Dinan, the President, Chief Executive Officer, and owner of Bel-Aire Mechanical, ER II 199-200, testified that by "early May 2008, the Dial project had begun to wind down, resulting in substantially diminished staffing requirements." *Id*. Throughout May, Bel-Aire laid off 18 workers from the Dial project, 6 of whom were apprentices like Bagley. ER II 200. In fact, from May to July, Bel-Aire reduced its entire staff by 1/3, totaling almost 300 people. *Id*.

The timeline of events also supports Bel-Aire's contention that Bagley had been slated for layoff even before Bagley complained. The incident with the noose occurred on May 5, 2008 and Bagley did not complain until three weeks later, on May 28, 2008. ER II 317. The testimony from Dinan and Schroder demonstrates that large numbers of employees were laid off from the Dial project in May, and by the end of May the work in Bagley's area of the Dial project was complete and everyone in his crew was either laid off or transferred. ER II 200, 214; 48: 15-17. Thus, by the time Bagley complained, the layoffs at the Dial project had already commenced in full force. By transferring Bagley to the Banner project, Bel-Aire

3

was able to extend Bagley's employment, even though the Banner project was finished shortly after Bagley's transfer. ER II 212, 304.

In sum, *Davis* does not, as the majority contends, force this court to conclude that Bel-Aire failed to present "evidence sufficient to permit the factfinder to conclude that it had a legitimate, nondiscriminatory reason for the adverse employment action." *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005). Bel-Aire explained specifically how its lack of available work, coupled with Bagley's skill and the completion of his assigned area on the Dial project, resulted in Bagley being transferred and ultimately laid off.

## II.

While I disagree with the majority that Bel-Aire did not provide a legitimate, nondiscriminatory reason for the ultimate layoff, I agree that Bagley introduced sufficient evidence to create a triable issue of fact as to pretext. I write separately, however, to highlight the manner in which plaintiff's counsel inappropriately—and misleadingly—twisted portions of the record out of context.

Bagley attempts to establish pretext by presenting evidence that the Dial project was far from complete. Bagley states that "Will Guy admitted that Bel-Aire was 'way behind' at the Dial project, and there was plenty of more work to be done at the Dial project in early June of 2008…." A closer look at this alleged admission shows that Bagley twisted Guy's statement out of context. In the portion of the

4

testimony Bagley cites, Guy is discussing the reasons he fired Vernon McBride, the individual responsible for making the hangman's noose. ER II 156-57. The deposition testimony is as follows:

> **Q. Let me ask you this: Now, did you ask Vernon McBride, hey, Vernon why did you tie this hangman's noose? What's up with that? Basic simple question, why did you do it?**
> **Did you ask him why he did it?**
>
> A. No.
>
> **Q. Why?**
>
> A. Because I knew it was wasn't going to get – he probably wasn't going to tell me the truth. Nobody was going to tell me the truth. What I had to find out is were they making knots on the job? Was rope being tied? Was there a hangman's noose involved and that was enough for me.
>
> **Q. Now, sir, as a pipefitter, do you sometimes make knots to help you do your work?**
>
> A. Yes.
>
> **Q. Now, now as foreman, aren't you supposed to teach apprentices how to do their job? Isn't that part of the job?**
>
> A. There's school. We have classes. There's a knot-tying class. Were they screwing off? Yes. Should they have been on the job making knots? No.
>
> **Q. I hear you.**
>
> A. Up there in the area they were working in, they were way behind.

5

*Id*. Placing the "way behind" language back into context, it is clear that Guy was simply discussing why he was upset with McBride's horseplay and that McBride and others who were engaged in that horseplay had plenty of actual work to do. ER II 156-157, 239. That is a far cry from Bagley's statement that Guy testified that the entire Dial project was behind and that there was plenty of work left to do in June 2008.

Next, to strengthen his pretext argument, Bagley states that even though he was transferred, other apprentices continued to work at the Dial project through November or December 2008. Bagley states: "In fact, Bel-Aire Operations Manager Drew Schroder testified that apprentices continued to work for Bel-Aire at the Dial project until November or December of 2008." Bagley's statement leads our court to believe that Schroder stated that other apprentices, including pipefitters, retained their positions at the Dial project through November and December even though Bagley did not. Schroder never made such a statement. Rather, Schroder testified that only two project superintendents, Will Guy and Paul Delaware, worked through that time period. ER II 213; 42: 17-24. Furthermore, in response to counsel's question, "How many plumbers did you have working in the fall of 2008 at the Dial job? And I'll tell you by fall, I mean September, October and November?", Schroder answered, "We were probably down to maybe five." ER II 213; 44: 11-15. Again, Schroder did not state that there were apprentices

6

who continued to work on the Dial project through November or December 2008, let alone pipefitters like Bagley.

As a review of Schroder's testimony demonstrates, Bagley took unsupported leaps in characterizing Schroder's testimony in an effort to bolster his pretext argument. Ultimately, despite counsel's mischaracterization of the testimony, I believe the following facts create a genuine dispute of material fact as to pretext: (1) the temporal proximity between Bagley's complaint and his termination; (2) Will Guy's, one of Bel-Aire's project superintendents, testimony that Bagley should have taken matters into his own hands and may have been complaining just "to put on a show," ER II 154; and (3) Bagley's testimony that Guy told him he was being transferred for his physical safety as a result of the complaint, ER II 100.

## III.

Because Bel-Aire presented evidence as to why it slated Bagley specifically for layoff, I dissent from that portion of the memorandum disposition that holds otherwise, and concur in the remainder.